The opinion of the court was delivered by
Manning, C. J.
Isaac B. Pass had been a merchant, or trader — got in debt — and broke. Shortly afterwards a new store was opened, wherein business was earried'On in the name of N. Pass thus; — “ N. Pass per I. B. Pass agent.” Isaac had a son, by name Nathan. It was he that was meant by N. Pass. The lad was not of age, but he had already made a precocious start — had contracted debts, and had pleaded minority when sued for them. He manifested a vicious propensity to plead it *1279 again, and reproached the defendants’ lawyer for having taught him the device. .
The steamboat, Tensas Belle, became the property of these people, or one of them. The title was in Nathan. The defendants had.a judgnient against Isaac, upon which they issued execution, and had the boat seized. The present plaintiff in joins, and the defendants attack the sale and title to Nathan Fass as simulated, and justify the seizure, alleging that the boat belongs to Isaac Fass, and was bought with his money actually made by his business, or borrowed by him.
Simulation'is rarely susceptible of direct and positive proof. At best, you can resort only to the proof of other facts, from which there is fastened upon the mind the conviction that the simulation is also a fact. The statement of the relations between the parties, and their previous history, gives strong colour to the charge. To rebut it, the plaintiff relies upon Ben Gerson, his New-Orleans correspondent. He commences by saying he does not know the plaintiff personally, but he has been dealing with his father as his agent — that plaintiff owes him, and the debt was contracted by his father (his agent) for plaintiff’s account. He puts it in another form — the debt was incurred through Isaac B. Fass, the agent of N. Fass. The credit was extended to N. Fass through Isaac B. Fass his agent. He looks to Nathan as the party owing him. Nathan never appeared as an actor in the business. It was all done through his father who was his agent. He extended the credit to Nathan individually, and upon the experience of Isaac, which led him to believe that he could meet the payment of the same. He had no security of any kind.
It is apparent that this witness was giving credit to Isaac Fass alone. He did not know Nathan, but he did know-that Isaac, for some cause, was doing business in this roundabout way. He repeats in three different ways that Nathan is his debtor, whom he has never seen, who has furnished him no security, and who, so far as he knows, is not in existence, but it is on Isaac’s experience that he relies for repayment. The same witness’ depositions, taken in another cause, are in evidence, wherein he is more explicit. I considered, he says, the old man Isaac as being badly crippled in business, and not being able to use his own name, took that of his son to do business under. He relates the manner in which his business connection with Fass commenced. He came to me two or three years ago, and represented himself as the agent of Nathan Fass, and obtained of me advances upon that representation.
That is to say, upon Isaac’s representations that he was the agent of Nathan, whom the witness did not know, had never heard of, and of whose ability to answer a judgment he was ignorant, and of whose *1280 integrity he knew nothing — the witness, bfeing a business man in New Orleans, incontinently gave credit to Nathan, and loaned him money.
In another place he states the actual facts without prevarication;— my view of the relations existing between Isaac and Nathan Pass was, the real man was Isaac B., who could not conduct business under his own name, and for that reason had adopted the name of his son Nathan for the purpose of doing business.
That is our view also. The steamboat was the property really of Isaac, the debtor of the defendants, was property seized by them, and the plaintiff’s injunction was improperly granted.
There seems to be a popular notion, and it has crept into the profession, that a man has but to pretend to carry on business in another’s name, while he is actually sole owner and manager, to succeed in screening his property from the pursuit of his creditors. There is really no excuse or justification of this concealment, and the practice will not find encouragement from the manner in which we deal with it.
The plaintiff prays for damages. We shall give them to the defendant.
It is ordered and decreed that the judgment of the lower court is avoided and reversed, and that there be judgment in favor of the defendants, dissolving plaintiff’s injunction, and for ten per centum damages and costs.